IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA WILLIAMS, *et al.*, Plaintiffs, | CIVIL ACTION |
| v. | |
| SWEET HOME HEALTHCARE, LLC, *et al.*, Defendants. | No. 16-2353 |

# MEMORANDUM

**Schiller, J.**                                                                                           **November 9, 2018**

The parties in this Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA") case have settled their dispute. Plaintiffs now move for final certification of the FLSA collective action; final approval of the settlement; approval of Plaintiffs' request for attorneys' fees, costs, and claims administration fees; and approval of Plaintiffs' request for class representative incentive payments. For the reasons that follow, the Court will approve the class action settlement, attorneys' fees for $541,667, and the requested costs, claims administration fees, and incentive payments.

## I. BACKGROUND

### A. Facts

This case arises from a wage dispute between Sweet Home Primary Care,[1] a home healthcare agency, and its employees. Sweet Home employed Lawrence Harris and Tina Williams as home healthcare workers. (Pls.' Uncontested Mot. for Final Approval of Collective and Class Action Settlement [Pls.' Mot.] at 3.) Harris and Williams filed a class and collective action on behalf of themselves and similarly situated employees (collectively, "Plaintiffs"), alleging that

---

[1] For the purposes of this opinion, references to Sweet Home also include Tekia Emerson, the sole principal and CEO of Sweet Home, and Darryl Ezell, Emerson's spouse.

Sweet Home used two business practices to avoid paying overtime wages. First, Sweet Home allegedly failed to apply an overtime multiplier to employees' hours worked over 40 hours. (*Id.*) Second, when Sweet Home did apply an overtime multiplier, it allegedly manipulated the base rate downward to effectively pay the same weekly total as if employees did not work overtime. (*Id.*) Plaintiffs also allege that Sweet Home deprived employees of overtime wages by arbitrarily classifying some healthcare workers as employees and others as independent contractors. (*Id.*) Sweet Home, however, denies Plaintiffs' allegations and contested liability on several grounds. (*Id.*)

### B. History of the Litigation

After Plaintiffs commenced this lawsuit in April 2016, Sweet Home unsuccessfully tried to dismiss the complaint, arguing that Plaintiffs are exempt from overtime wages and that Department of Labor regulations removing the claimed exemption are invalid.

The parties attended a mediation conference with Magistrate Judge Timothy Rice in April 2017. To prepare for the mediation, the parties exchanged some discovery from November 2016 through April 2017. That mediation, however, did not resolve the case.

Thereafter, Sweet Home answered Plaintiffs' complaint and the parties continued with discovery. This Court conditionally certified the FLSA collective action, certified the Rule 23 class action, and directed the parties to develop a proposed notice plan. Sweet Home unsuccessfully petitioned the Third Circuit for permission to appeal the Rule 23 class certification.

The parties attended a second mediation conference with Magistrate Judge Rice in May 2018. This time, with his active participation and assistance, the parties reached a settlement agreement. Following the mediation, notice was provided, and claims were reviewed and processed. Plaintiffs now seek final approval of the settlement agreement, as well as attorneys' fees, costs, claims administration fees, and class representative incentive payments.

### C. Settlement Terms

The settlement terms provide that Defendants will pay a maximum Settlement Amount of $1,625,000 to resolve this litigation. (Settlement Agreement ¶ 21.) That amount includes court-approved attorneys' fees and costs; incentive payments of $6,000 to each Class Representative; costs of the claims administrator; and any applicable withholding taxes on back wage payments. (*Id.* ¶¶ 31, 34; Pls.' Mot. at 5.) The Settlement Amount, less those fees and costs, is the Class Member Distribution Amount. (Settlement Agreement ¶ 10.)

Each Class Member will receive a share of the Class Member Distribution Amount. To calculate an individual's share, the individual Class Member's total unpaid wage claim is divided by the total amount of all Class Members' claims; the resulting fraction is multiplied by the Class Member Distribution Amount. (*Id.* ¶ 33.) On average, each Class Member will receive approximately $588: roughly 313 awards are greater than $1,000 and 123 awards are less than $10. (Decl. of Steven Angstreich in Support of Pls.' Mot [Angstreich Decl.] ¶ 6.)

In exchange, all members of the Rule 23 Class and the Collective Action Class will release Defendants of claims relating to unpaid wages, overtime pay, interest, liquidated damages, or other such penalties. (Settlement Agreement ¶¶ 69–70.)

## II. DISCUSSION

To proceed with the proposed settlement, Plaintiffs ask that the Court grant final certification to the FLSA collective action and approve the settlement terms. The Court, however, need not grant FLSA final certification because no one opted into the FLSA collective action. The Court approves the settlement terms because it concludes that the terms are fair, reasonable, and adequate based on a review of the record, a fairness hearing, and an application of well-established guidelines.

**A. Fairness of the Proposed Settlement**

   *1. The Settlement is Entitled to an Initial Presumption of Fairness*

The Court concludes that a presumption of fairness is warranted here. A presumption of fairness attaches to a proposed class action settlement when the reviewing district court determines that: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Here, all four factors are met. First, the parties negotiated their settlement with Magistrate Judge Rice's participation and assistance. *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (deciding that negotiations occurred at arm's length when the parties negotiated for "two full days of mediation before an experienced mediator"). Second, the parties engaged in extensive discovery. Before the first mediation, the parties engaged in six months of discovery. (Pls.' Mot. at 3.) After the first mediation, the parties conducted depositions of Class Representatives and Sweet Home representatives, exchanged interrogatories, produced documents, and consulted an accounting expert for damages analysis. (Pls.' Mot. at 4.) Third, Class Counsel has significant class action experience. (Pls.' Mot. at Ex. 2.) Finally, there are no objections to the settlement. (Fairness Hr'g, Nov. 8, 2018.) Therefore, the settlement is presumptively fair.

   *2. The Settlement is Fair, Reasonable, and Adequate*

The Court is convinced, after careful consideration of the well-established guidelines for class action settlements, that the settlement is fair, reasonable, and adequate. Certified class action settlements require court approval. Fed. R. Civ. P. 23(e). Proposed settlements that bind class members may only be approved "after a hearing and on finding that it is fair, reasonable, and

adequate." *Id.* Courts deciding whether a settlement meets this standard are guided by the nine factors enunciated in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). Thus, courts examine: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Id.* at 157. On balance, the factors support approval of the settlement.

    *a. Complexity, expense, and duration of litigation*

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). Plaintiffs submit that continued litigation "would require extensive testimony and complicated determinations of several of the issues as to both liability and damages," especially given Sweet Home's "aggressive litigation position." (Pls.' Mot. at 11.)

The Court agrees that this settlement saves substantial amounts of time and resources. Continued litigation would likely involve depositions of additional expert witnesses. The Court also suspects that, regardless of the outcome at trial, post-trial motions and an appeal would follow; Sweet Home already sought to appeal the Court's Rule 23 class certification. Therefore, the first *Girsh* factor weighs in favor of approving the settlement.

    *b. Reaction of class to settlement*

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). To determine whether class members support the settlement, "courts look to the

number and vociferousness of the objectors." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). If there are no objectors, courts generally assume that silence constitutes class members' agreement, although "the practical realities of class actions ha[ve] led a number of courts to be considerably more cautious about inferring support from a small number of objectors." *Id.*

Here, there are no negative reactions to the settlement. No one objected to the settlement and only one Class Member opted out. (Fairness Hr'g, Nov. 8, 2018.) The Class's reaction, rather, seems positive. In fact, Class Counsel "received over 50 telephone calls from Class Members who overwhelmingly expressed satisfaction with the settlement." (Pls.' Mot. at 12.) This factor, therefore, weighs in favor of approving the settlement.

    c. *State of the proceeding and amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813. An adequate appreciation of the merits is more likely after discovery is completed. *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007).

In this case, the parties deposed Class Representatives and Sweet Home representatives, exchanged interrogatories, and produced tens of thousands of documents. (Pls.' Mot. at 3–4, 13.) The documents were reviewed by Plaintiffs' counsel and analyzed by Plaintiffs' expert to quantify the damages. (*Id.* at 4, 13.) In addition to conducting discovery, the parties attended two mediation conferences, approximately one year apart, with Magistrate Judge Rice. (*Id.* at 3–4.) Accordingly, the facts were well-developed and the parties well-informed before reaching settlement.

d. *Risks of establishing liability and damages*

The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319. The riskier the litigation, the more likely this factor favors approving a settlement. *See id.*

Here, the Court credits Plaintiffs' assertions that they faced several hurdles to establish liability and damages. *See Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997) ("[T]he court must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action."). Establishing liability may require extensive fact presentation, especially since Sweet Home argues that many Class Members are independent contractors; establishing damages will be complicated because Sweet Home restructured its pay practices after Plaintiffs filed this lawsuit. (Pls.' Mot. at 13.) These hurdles are not necessarily grave, but "litigation is always inherently unpredictable." *Auto. Refinishing Paint*, 617 F. Supp. 2d at 343. Given these hurdles, the fourth and fifth *Girsh* factors favor approving settlement because the certainty of immediate payment eliminates the risks.

e. *Risks of maintaining the class action through trial*

The sixth *Girsh* factor considers the risks of maintaining a class action throughout the litigation. "There will always be a 'risk' or possibility of decertification." *Prudential*, 148 F.3d at 321. Here, beyond the invariable possibility of decertification, the Plaintiffs do not identify any specific risks. Thus, the Court concludes that this factor is neutral.

f. *Ability of defendant to withstand a greater judgment*

The seventh *Girsh* factor evaluates "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240. In this case,

7

during Court-sponsored mediations, Sweet Home "repeatedly asserted that there was a potential inability to pay an ultimate judgment as a basis for settlement." (Pls.' Mot. at 14.) Therefore, the Court concludes that the seventh *Girsh* factor favors approving the settlement.

### g. *The range of reasonableness*

The last two *Girsh* factors "analyze the settlement in light of the best and worst case scenarios." *Auto. Refinishing*, 617 F. Supp. 2d at 344. Specifically, the factors assess "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322.

Here, almost $1,000,000 is available for distribution to Plaintiffs, a figure that amounts to almost half of the economic damages calculated by Plaintiffs' expert. (Pls.' Mot. at 14–15.) Given the risks of litigation described above, this is reasonable. *See, e.g.*, *Singleton v. First Student Mgmt. LLC*, Civ. A No. 13-1744, 2014 WL 3865853, at *7 (D.N.J. Aug. 6, 2014) (approving a proposed settlement that was 40% of the plaintiffs' estimate when including attorneys' fees). Therefore, the last two *Girsh* factors favor approving the settlement.

**B. Attorneys' Fees**

The Court awards the attorneys' fees requested by Plaintiffs, representing one third of the settlement fund, because it concludes that the amount is reasonable. In class actions, "the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

"There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method." *Prudential*, 148 F.3d at 333. The percentage-of-recovery method is favored if the case involves a common fund or a wage and hour dispute. *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016). Under the percentage-of-recovery

method, courts are guided by seven factors: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). In addition to the seven factors, district courts awarding fees from a common fund are advised to "cross-check the percentage award . . . against the lodestar method." *Id.* at 199.

Because this wage and hour case involves a common fund, the Court will apply the percentage-of-recovery method. The seven factors guiding the percentage-of-recovery method, as well as the lodestar cross-check, favor awarding the requested attorneys' fees. Therefore, the Court will award $541,667, which represents one third of the settlement fund, as attorneys' fees.

1. *Size of the Fund and the Number of Persons Benefitted*

First, the Court considers the size of the fund and the number of persons benefitted. Larger funds may be awarded lower percentages where the increased recovery confers a windfall on counsel or loses its relationship to counsel's efforts. *Prudential*, 148 F.3d at 339. Here, the size of the fund ($1,625,000) and the number of persons benefitted (1,701) is significant but not remarkable. *See In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000) (noting that "$100 million seems to be the informal marker of a 'very large' settlement"). The Court does not believe that the award in this case results in an unmerited windfall for the attorneys. Therefore, this factor weighs in favor of awarding the requested fees.

2. *Substantial Objections by Class Members*

Second, the Court considers the presence or absence of substantial objections by class members to the settlement or requested attorneys' fees. The absence of objections favors the

approval of requested attorneys' fees. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). Here, as previously discussed, there are no objections to the settlement or requested attorneys' fees. Accordingly, this factor weighs in favor of awarding the requested fees.

### 3. *The Skill and Efficiency of the Attorneys Involved*

Third, the Court evaluates the skill and efficiency of the attorneys involved by measuring "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018).

The attorneys in this matter have considerable skill and experience handling class actions. (Pls.' Mot. at Ex. 2.) Class Counsel showed considerable skill by defeating a motion to dismiss, litigating class and collective action certification, handling discovery disputes, accumulating relevant payroll data, consulting experts to calculate damages, and negotiating settlement. This skill and experience weigh in favor of awarding the requested attorneys' fees.

### 4. *The Complexity and Duration of the Litigation*

Fourth, the Court considers the complexity and duration of the litigation. "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts." *Brumley v. Camin Cargo Control, Inc.*, Civ. A. No. 08-1798, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012). Here, the parties litigated for approximately two years before settling. Even then, the parties only settled with the assistance and participation of Magistrate Judge Rice. That the parties only settled after two rounds of mediation with a skilled judicial officer suggests that the litigation is complex. Thus, this factor weighs in favor of awarding the amount requested by counsel.

*5. Risk of Non-Payment*

Fifth, the Court considers whether Class Counsel risked non-payment. This case involved a few risks of non-payment: Class Counsel took Plaintiffs' case on a contingent basis and Sweet Home represented during settlement negotiations an inability to pay a potential judgment. Therefore, this factor weights in favor of awarding the requested attorneys' fees.

*6. Hours Devoted by Counsel*

Sixth, the Court considers the time that Class Counsel devoted to the case. As of September 2018, Class Counsel spent 1,570 hours on the litigation; additional time will be spent completing the settlement. (Pls.' Mot. at 21.) The Court finds that this substantial amount of time devoted to the case weighs in favor of awarding the requested attorneys' fees.

*7. Awards in Similar Cases*

Seventh, the Court considers fee awards in similar cases. In common fund cases, fee awards generally range from 19% to 45% of the settlement fund. *Galt*, 310 F. Supp. 3d at 498. "More specifically, fee awards ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million—funds which are comparatively smaller than many common funds." *Id.* at 498. Here, Class Counsel requests a percentage of recovery that falls in the middle of a spectrum approved by courts in this Circuit. The Court finds that an award representing one third of the settlement fund is comparable to other common fund cases. Thus, this factor also weighs in favor of awarding the requested attorneys' fees.

*8. Lodestar Cross-Check*

Finally, the Court will calculate attorneys' fees using the lodestar method to cross-check the percentage-of-recovery method. To perform the lodestar cross-check, the court "multipl[ies] the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the

experience of the attorneys." *Rite Aid*, 396 F.3d at 305. Since the percentage-of-recovery method is favored in common fund cases, the cross-check does not require "mathematical precision [or] bean-counting." *Id.* at 306.

Here, as of August 29, 2018, the attorneys and paralegals spent 1,571.6 hours for an average billing rate of $323.00. (Pls.' Mot. at 22–23.) Based on those figures, the lodestar reached $507,681.50 in August 2018. (*Id.* at 24.) The lodestar continued and will continue to increase based on the time required to complete settlement. Therefore, the cross-check confirms the reasonableness of the requested contingency fee totaling $541,667.

### C. Costs

Class Counsel incurred costs totaling $49,868.05, which is approximately $25,000 less than the amount referenced in the Notice to Class Members. The costs include, among other things, expert witness fees, payroll record review fees, court reporting fees, and research charges. (Pls.' Mot. at 24.) The Court concludes that the requested award of costs is reasonable given Class Counsel's efforts throughout the litigation.

### D. Payment to Claims Administrator

Plaintiffs also request that the Court approve payment to the Claims Administrator, RG2 Claims Administration. The Claims Administrator's duties include preparing and mailing class notice, distributing payments, and reporting the taxes and withholdings pursuant to settlement payments. (Pls.' Mot. at 1, 5–6.) The fee for the Claims Administrator's services will not exceed $22,000. (*Id.* at 25.) The Court approves this fee as reasonable. *See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 316 (E.D. Pa. 2012) (approving a $25,000 payment to the claims administrator as reasonable). Therefore, the Court approves the Claims Administrator's costs not to exceed $22,000.

### E. Incentive Payments to Class Representatives

The proposed incentive payments to Harris and Williams are fair and reasonable because the Class substantially benefited from their services and risks. "Incentive payments may be approved to compensate class representatives for services they provide and risks they incur during the course of litigation as well as to reward the members for the benefit they provide to the class and to the public." *Galt*, 310 F. Supp. 3d at 496. When an incentive payment "comes out of the common fund independent of attorneys' fees, the Court must carefully review the request." *Id.*

In this settlement, the parties agreed that Harris and Williams, the Class Representatives, will each receive a $6,000 incentive payment. The $6,000 figure is consistent with awards granted in similar cases where class representatives benefitted class members and accepted financial or reputational risks. *See id.* (approving an enhancement payment of $5,000 to each named plaintiff). Harris and Williams substantially benefitted the other employees by initiating the action, attending depositions, responding to discovery, and participating in the mediation with Magistrate Judge Rice. (Pls.' Mot. at 25.) In addition to rendering services, Harris and Williams accepted reputational risk by commencing and supporting the litigation; Harris also accepted financial risk because she continued working for Sweet Home during the litigation. (*Id.*) Accordingly, the Court will award the amounts requested.

### III. CONCLUSION

For these reasons, the Court will grant final approval of the parties' Settlement Agreement, including the requested attorneys' fees and costs, the capped payment to the Claims Administrator, and the incentive payment to the Class Representatives. An appropriate Order will be docketed separately.